IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SCOTT M. VOGELSANG,

               Plaintiff,                 No. 2:09-cv-02885 JAM KJN PS

    vs.

LAURA ZINE, et al.,

                                      FINDINGS AND RECOMMENDATIONS

               Defendants.

_____/

        Presently before this court are multiple motions to dismiss.[1]  Plaintiff, appearing without counsel, opposes these motions.  The undersigned has fully considered the parties' briefs and the entire record in this case and, for the reasons stated below, recommends that defendants' motions to dismiss be granted and that this action be dismissed.

I.     BACKGROUND

    A.    Procedural History

        Plaintiff, appearing without counsel, filed a complaint on October 16, 2009.  (Dkt. No. 1.)  Plaintiff's complaint asserts state law claims against numerous defendants for

---

[1]  This action proceeds before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1), and was reassigned by an order entered February 9, 2010.  (Dkt. No. 6.)

1

conspiracy, fraud, defamation and negligence.  (Id. at 1.)  On November 30, 2009, defendant the State of California, by and through the Department of Healthcare Services and the Department of Justice, along with defendants Vivian Auble, Becky Larsen and Traci Waldheim (hereinafter the "State defendants") filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. No. 15.)  On December 7, 2009, defendants the Department of Health and Human Services-Office of General Counsel ("DHHS-OIG") and the United States of America (collectively the "Federal defendants") filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).[2]  (Dkt. No. 23.)  On December 24, 2009, defendant Laura Zine (hereinafter "Zine") filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1) and 12(b)(6), as well as California Code of Civil Procedure 338(d).  (Dkt. No. 26.)  On December 29, 2009, defendant Electronic Data Systems, LLC (hereinafter "EDS") filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. No. 29.)  On December 30, 2009, defendant CIGNA Corporation (hereinafter "CIGNA") filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. No. 31.)

On January 4, 2010, plaintiff filed an opposition to all of the above-motions to dismiss.  (Dkt. No. 32.)  Magistrate Judge Gregory G. Hollows took these matters under submission without oral argument in an order dated January 26, 2010.  (Dkt. No. 39.)  On January 27, 2010, plaintiff filed a "supplemental opposition" to these motions to dismiss.  (Dkt. No. 41.)

On March 1, 2010, the remaining defendant who had not yet responded to the complaint, Vicki Bennett (hereinafter "Bennett"), filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), as well as California Civil Procedure Code

---

[2]  On December 3, 2009, the United States filed a Certification of Scope of Federal Employment.  (Dkt. No. 21.)  This certification, by operation of the provisions of 28 U.S.C. § 2679(d), effected the substitution of the United States as the proper party defendant in lieu of individual defendants Jeffrey Dubsick ("Dubsick"), Jerry Lynn Hurst ("Hurst") and Jean Stone ("Stone").

section 338(d) and California Civil Code section 47.  (Dkt. No. 50.)  Plaintiff filed an opposition

to that motion on April 13, 2010.  (Dkt. No. 53.)  That motion was taken under submission by the

undersigned on April 29, 2010.  (Dkt. No. 54.)

   B.  <u>Factual Background</u>

    I.  United States v. Vogelsang

    Plaintiff was previously prosecuted in the United States District Court for the

Eastern District of California, before the Honorable Morrison C. England, Jr., for 22 counts of

healthcare fraud in violation of 18 U.S.C. § 1347 and one count of witness tampering.  <u>United</u>

<u>States v. Vogelsang</u>, Eastern District of California Case No. 2:02-cr-00151 MCE CMK.  The

healthcare fraud allegations claimed that plaintiff, a durable medical equipment provider, took

advantage of the potential for overpayments in the Medicare system to commit fraud in the form

of "scooter swaps"[3] and "double billing."

    Following a jury trial, on April 22, 2004, the jury found plaintiff guilty on all

counts except the witness tampering count.  Plaintiff was sentenced to concurrent 33-month

sentences on each count, plus $168,577.84 in restitution, a penalty assessment of $2,200.00 and

36 months of supervised release.  <u>See</u> <u>United States v. Vogelsang</u>, 2:07-cv-0247 MCE CMK,

2008 WL 1710103, at *2 (E.D. Cal., April 8, 2008).  The court record in plaintiff's federal

criminal case is extensive.  It contains multiple documents relating to plaintiff's displeasure with

his criminal counsel, plaintiff's request for a new trial, plaintiff's continued assertions of actual

innocence and plaintiff's allegations of conspiracy and perjury by trial witnesses.  Plaintiff was

formally sentenced on September 6, 2005.  (Dkt. No. 32 at 4.)

    Plaintiff filed a direct appeal of his conviction, contending in part that the district

court abused its discretion in excluding testimony that plaintiff characterized as evidence of third

---

   [3]  In the scooter swaps scheme, plaintiff fraudulently substituted motorized scooters for power wheelchairs.  Scooters cost far less than power wheelchairs.  <u>United States v. Vogelsang</u>, 2:07-cv-0247 MCE CMK, 2008 WL 1710103, at *2 (E.D. Cal., April 8, 2008).

party culpability.  The Ninth Circuit, upon review, denied plaintiff's direct appeal and affirmed

plaintiff's conviction in an unpublished opinion.  United States v. Vogelsang, 2006 WL 3613201,

at *1 (9th Cir., Dec. 11, 2006).  The Ninth Circuit's decision is as follows:

> Scott Vogelsang appeals his conviction on 22 counts of health care fraud in violation of 18 U.S.C. § 1347.  He challenges the conviction on the ground that the district court abused its discretion in excluding testimony that Vogelsang characterized as evidence of third party culpability.  The district court excluded the evidence for lack of sufficient probative value, and we agree.  The evidence dealt with misconduct on the part of a supervisor in the claims processing office, but with respect to the handling of claims other than those submitted by Vogelsang.  It is not evidence even suggesting that the supervisor could be guilty of the crimes with which Vogelsang was charged.
>
> Vogelsang also challenges his sentence on the ground that the district court should have conducted an evidentiary hearing to determine the amount of loss caused by the fraud.  The government introduced testimony calculating the amounts that Vogelsang had double billed.  Vogelsang did not submit or proffer any evidence that the loss should be calculated differently.  The amount was not reasonably in dispute so as to give rise to the need for any evidentiary hearing.  See U.S.S.G. § 6A1.3(a).  Affirmed.

Id.

Plaintiff, when he was a federal prisoner, also filed a pro se civil action for habeas

corpus relief to correct or set aside his criminal judgment pursuant to 28 U.S.C. § 2255.  Plaintiff

also sought leave to conduct formal discovery.  Plaintiff filed numerous documents in that habeas

action asserting claims similar to those brought in the instant civil case.  For instance, plaintiff

filed a document entitled "complaint and motion for writ of conspiracy" brought against several

of the same defendants named in this action.  See United States v. Vogelsang, 2:02-cr-00151

MCE CMK (Dkt. No. 217.)  Plaintiff argued then, as he argues here, that Bennett falsely testified

and destroyed evidence.  (Id. at 2.)  Plaintiff also contended that Zine engaged in a conspiracy

and provided false testimony.  (Id. at 3.)  Plaintiff argued that the evidence before this court and

in the possession of the United States "demands an immediate release of Vogelsang from

incarceration."  (Id.)

The district court denied plaintiff's motion for habeas relief.  (Id., Dkt. No. 247);

United States v. Vogelsang, 2:07-cv-0247 MCE CMK, 2008 WL 2484894, at *1 (E.D. Cal., June

4

19, 2008).  Despite plaintiff's contentions that the prosecutors suborned perjury, obstructed discovery, and engaged in various exhibit errors and forgeries, the court found no grounds for reversal of plaintiff's conviction.  In so finding, the magistrate judge held, inter alia, that "movant does not present anything to this court beyond conclusory and unsubstantiated arguments that the government's evidence was false and that he is not guilty of the crimes."  See United States v. Vogelsang, 2:02-cr-00151 MCE CMK (Dkt. No. 247.)

On June 9, 2008, plaintiff objected to the findings and recommendations of the magistrate judge in a 46 page filing which mirrors much of the complaint in the instant civil action.  (Id., Dkt. No. 250.)  Plaintiff argued, as he does in the instant complaint, that the parties and the court "failed to comprehend the significance of the Charpentier[4] injunction," that EDS improperly applied Medi-Cal adjustments, that Zine and Bennett engaged in conspiracy and perjury and that plaintiff was actually innocent.  (Id.)  Plaintiff further argued that Dubsick erroneously testified at trial.  (Id.)  Plaintiff contended that CIGNA admitted that certain medical claims at issue were denied in error.  (Id. at 24.)  Plaintiff argued about the validity of discovery from Larsen and Dubsick.  (Id. at 25.)  Plaintiff stated that Hurst's testimony at trial contained false information.  (Id. at 35-36.)  Plaintiff attached much of the same evidence to this habeas filing as he does in the instant case.  See, e.g., id. at 45; 2:09-cv-02885 JAM KJN Dkt. No. 41 at 5 (attaching identical email dated August 23, 2005).

District Judge Morrison C. England, Jr., after reviewing the plaintiff's objections and the magistrate judge's findings and recommendations de novo, denied the plaintiff's section 2255 habeas petition.  (Id., Dkt. No. 251.)  Plaintiff then sought a certificate of appealability to challenge his conviction.  Judge England found that there was not a "substantial showing of the

---

[4]   From the attachment to plaintiff's opposition briefing, he appears to be referring to the case Charpentier, et al. v. Kizer, et al., 1990 WL 252191 (E.D. Cal., Nov. 19, 1990).  See (Dkt. No. 32, Ex. J.)  In that unrelated civil case from the year 1990, District Judge Edward J. Garcia granted a preliminary injunction pending resolution of a trial on its merits.  The injunction, inter alia, prohibited certain defendants from limiting payment for durable medical equipment needed by plaintiffs to 20% of the Medicare "reasonable charge" limit for such equipment.  Id. at *1.

1  denial of a constitutional right" and denied plaintiff's request for a certificate of appealability.

2  United States v. Vogelsang, 2008 WL 4629784, at *1 (E.D. Cal., Oct. 17, 2008).[5]

3          ii.     Vogelsang v. United States, et al.

4          On October 16, 2009, plaintiff filed this civil action against numerous parties

5  involved in the underlying criminal investigation and prosecution.  (Dkt. No. 1.)  In general, the

6  allegations plaintiff makes in the instant complaint and in opposition to the motions to dismiss

7  seek to refute the allegations in the indictment of plaintiff's underlying criminal case.  (See Pl.'s

8  Opp'n to Mtn. to Dismiss (Dkt. No. 32 at 2).)  The complaint includes causes of action for

9  conspiracy, fraud, defamation and negligence stemming from plaintiff's underlying criminal

10  prosecution, trial and conviction.  (Dkt. No. 1.)

11          Plaintiff contends that the Federal defendants and State defendants have failed to

12  perform the duties of their respective offices by failing to coordinate or audit payments for

13  benefits in accordance with relevant regulations, and that those defendants failed to apply

14  appropriate legal standards in his underlying criminal case.  He argues that federal agents

15  colluded with witnesses and suborned perjury in the underlying criminal trial in violation of his

16  civil rights, and that defendants Bennett and Zine committed perjury and were involved in a

17  conspiracy to conceal their fraudulent acts.  Plaintiff contends that new evidence following his

18  criminal trial led him to the conclusion that there was improper collusion between defendants and

19  destruction of records.  (Dkt. No. 32 at 11.)  Plaintiff argues that the "criminal court obtained a

20  conviction where it lacked jurisdiction based on an emotionally charged trial with its agent's

21  Dubsick's failure to understand the subject matter and Charpentier's impact, fraud, colluding of

22

23       [5] On December 24, 2009, the underlying trial judge, Judge England, modified the
conditions of plaintiff's supervised release to include that Vogelsang shall have "no personal

24  contact or communication in any manner with any case agent or other persons associated with the
underlying offense, unless in the presence of an attorney."  United States v. Vogelsang, 2:02-cr-

25  00151 MCE CMK (Dkt. No. 262.)  This modification was apparently put in place following
plaintiff's attempt to contact and personally serve documents in this civil case upon a former

26  criminal case agent.

witnesses, perjury, and etcetera." (Dkt. No. 32 at 12.)

Plaintiff also contends that defendants Zine and Bennett and possibly other defendants conspired to embezzle money and inventory from plaintiff's medical billing company in 2000 and 2001. (Dkt. No. 1 at 5-12.) Plaintiff alleges that Bennett's perjury was part of a continuing fraud against plaintiff wherein Bennett colluded to falsify Medicare Certificates of Medical Necessity and submit claims with altered certificates. (Dkt. No. 1 at 11.)

Plaintiff argues that Dubsick, a representative of DHHS-OIG, falsely testified at plaintiff's trial, persuaded other witnesses to change their testimony, and conspired with DHHS-OIG to prosecute plaintiff without jurisdiction. (Dkt. No. 1 at 11-12.) Plaintiff further alleges that defendant Hurst, an alleged representative of DHHS-OIG, provided testimony at plaintiff's criminal trial in 2004 that was either false or inaccurate. (Dkt. No. 1 at 12.) Plaintiff contends that Hurst used false accounting in his testimony and "colluded with Zine, Bennett, Dubsick, DHHS-OIG and Does to secure a criminal conviction for fraud against the plaintiff. Hurst continues to do so and failed to correct his fraud even after being informed of his error in March of 2009." (Dkt. No. 1 at 12-13.) Plaintiff alleges that Stone testified negligently at plaintiff's criminal trial concerning medicare reimbursement rates. (Dkt. No. 1 at 17-18.)

Plaintiff also contends that defendants Larsen, Auble, EDS, CDHCS, Waldheim and the California Department of Justice negligently failed to review documents in their possession and failed to follow federal regulations regarding third-party payment adjustments. Further, plaintiff contends that defendants Larsen, CDHCS, Waldheim, the California Department of Justice, Stone, DHHS-OIG and CIGNA acted negligently and defamed plaintiff by making false affidavits and false criminal charges. Plaintiff alleges that Larsen and Waldheim, as agents for the State of California, negligently filed a two-count felony charge of elder abuse against the plaintiff in 2003. The plaintiff was then arrested and detained in February, 2005, but all charges were later dropped in November, 2005. As to defendant EDS, plaintiff contends that it neglected to make proper adjustments and properly process claims in its

7

1  possession, and that it hid material facts relating to that negligence.  (Dkt. No. 1 at 17.)

2        Plaintiff contends that all of the defendants conspired with each other through

3  "work, federal and state investigations and legal proceedings."  (Dkt. No. 1 at 13.)  Plaintiff

4  alleges that these acts were done knowingly to hide the defendants' fraud, deceit and conspiracy.

5  Plaintiff alleges that defendants so colluded to convict him for fraud, advance their careers and

6  force plaintiff's medical equipment business to close in an effort to conceal theft of inventory and

7  money.  (Dkt. No. 1 at 14.)

8        Plaintiff seeks millions of dollars in damages for his incarceration and the

9  allegedly wrongful restitution order imposed by this court as part of his criminal judgment.  (Dkt.

10  No. 1 at 20-22.)  Plaintiff also seeks injunctive relief from this court, including that it seal and

11  destroy all of plaintiff's arrest and conviction records.  (Dkt. No. 1 at 22.)

12        In opposition to the numerous motions to dismiss, plaintiff requests that the

13  parties and the court stipulate to the acceptance of an amended complaint and that all statute of

14  limitations be tolled until October 16, 2009, the date of the filing of the complaint.  (Dkt. No. 32

15  at 2.)  Plaintiff did not fully address any of the jurisdictional arguments raised by the parties.

16  Rather, plaintiff focused the bulk of his efforts on requesting leave to amend and leave to file a

17  second successive section 2255 habeas corpus petition based on newly discovered evidence.  (Id.

18  at 2-5.)  Plaintiff also argues in detail about his actual innocence from the underlying criminal

19  charges for which he was ultimately convicted.

20  II.    Legal Standards for Motion to Dismiss

21      A.    Motion to Dismiss Pursuant to Rule 12(b)(1)

22        Federal district courts are courts of limited jurisdiction.  The United States

23  Constitution Article III, § 1 provides that the judicial power of the United States is vested in the

24  Supreme Court, "and in such inferior Courts as the Congress may from time to time ordain and

25  establish."  Congress therefore confers jurisdiction upon federal district courts, as limited by the

26  U.S. Const. Art. III, § 2.  See Ankenbrandt v. Richards, 504 U.S. 689, 697-99 (1992).  Because

1  federal courts are courts of limited jurisdiction, a case presumably lies outside the jurisdiction of

2  the federal courts unless proven otherwise.  Kokkonen v. Guardian Life Ins. Co. of Am., 511

3  U.S. 375, 376-78 (1994).  Lack of subject matter jurisdiction may be raised at any time by either

4  party or by the court.  See Attorneys Trust v. Videotape Computer Prods., Inc., 93 F.3d 593, 594-

5  95 (9th Cir. 1996).

6            On a Rule12(b)(1) motion to dismiss for lack of subject matter jurisdiction,

7  plaintiff bears the burden of proof that jurisdiction exists.  See, e.g., Sopcak v. Northern

8  Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Thornhill Pub. Co. v. General Tel.

9  & Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979).  Presuming its factual allegations to be

10 true, the complaint must demonstrate that the court has either diversity jurisdiction or federal

11 question jurisdiction.  For diversity jurisdiction pursuant to 28 U.S.C. § 1332, plaintiff and

12 defendants must be residents of different states.  District courts have federal question jurisdiction

13 over "all civil actions that arise under the Constitution, laws, or treaties of the United States."  28

14 U.S.C. § 1331.  "A case 'arises under' federal law either where federal law creates the cause of

15 action or 'where the vindication of a right under state law necessarily turn[s] on some

16 construction of federal law.'"  Republican Party of Guam v. Gutierrez, 277 F.3d 1086, 1088-89

17 (9th Cir. 2002) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 8-9

18 (1983)).

19 III.   Discussion

20       A.   Lack of Subject Matter Jurisdiction

21            The court must first consider a motion to dismiss for lack of subject matter

22 jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure before any other motion,

23 because a finding that the court lacks jurisdiction would render all other objections and defenses

24 moot, including the defense of sovereign immunity.  See Rhulen Agency, Inc. v. Alabama Ins.

25 Guaranty Ass'n, 896 F.2d 674, 678 (2d Cir. 1990); Ninigret Dev. Corp v. Narragansett Indian

26 Wetuomuck Hous. Auth., 207 F.3d 21, 28 (1st Cir. 2000).

1    Several defendants herein argue that the complaint should be dismissed because it

2  pleads only diversity as this court's sole basis for jurisdiction.  This contention is well taken.

3    The complaint's sole alleged basis for jurisdiction is diversity of the parties,

4  pursuant to 28 U.S.C. § 1332.   Plaintiff, an alleged California resident, is not of diverse

5  citizenship from the defendants in this action.  As the State defendants contend, "diversity is

6  lacking for all of the State Defendants, who are either arms of the State of California, its

7  employees acting in their official capacities, or individuals who are residents of the same state as

8  [plaintiff]."  (Dkt. No. 25, Doc. No. 25-2 at 3-4.)  The plaintiff also alleges that defendants Zine,

9  Dubsick, Hurst, Larsen and Auble are residents of California.  (Dkt. No. 1 at 2-3.)  Because

10  complete diversity is absent, there is no basis for diversity jurisdiction pursuant to 28 U.S.C. §

11  1332.

12    This federal court lacks the jurisdiction and thus the authority to allow plaintiff

13  leave to amend the complaint.  The absence of actual diversity is a *fundamental* subject matter

14  jurisdiction issue that cannot be cured by a technical amendment to a complaint.  Where, as here,

15  the complaint fails to allege any substantive ground for federal jurisdiction, and diversity is

16  lacking, the court has no jurisdiction to allow leave to amend.  Morongo Band of Mission Indians

17  v. California State Bd. of Educ., 858 F.2d 1376, 1380 (9th Cir. 1988).  This is so because "[t]he

18  existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint

19  is filed."  Newman-Green, Inc. v. Alfozno-Larrain, 490 U.S. 826, 830 (1989).

20    A district court may allow amendment of pleadings to cure jurisdictional defects

21  of form, see 28 U.S.C. § 1653, such as where a party alleges residence instead of citizenship for

22  purposes of diversity.  However, where the complaint fails to allege a substantive ground for

23  federal jurisdiction, either diversity or federal question, a grant of leave to amend would itself be

24  without jurisdiction.  Morongo, 858 F.2d at 1380 (citing United States v. Boe, 543 F.2d 151, 159

25  (C.C.P.A. 1976) (when subject matter jurisdiction is lacking, the district court "ha[s] no power to

26  do anything, other than to dismiss the action," and any order other than to dismiss is a nullity)).

The instant complaint does not arise under federal law, is lacking in diversity and thus this court does not have jurisdiction over this action from its commencement.  Where, as here, jurisdiction is lacking at the outset of the case, the district court must dismiss the action.  Morongo, 858 F.2d at 1380-81 (9th Cir. 1988).[6]

        B.     Plaintiff Is Collaterally Estopped From Litigating This Action

Assuming, arguendo, that plaintiff would prevail on a contention that this court has the authority to grant amendment because any jurisdictional amendments are technical and procedural, rather than substantive, a proposition that is not apparent here, nevertheless amendment of the complaint would be futile.  As discussed below, the gravamen of plaintiff's proposed amended complaint is still an untimely and unauthorized attempt to retry and seek expungement of his criminal prosecution and conviction.

        I.     Issue Preclusion Prevents Relitigation Of The Jury's Verdict

Where, as here, the plaintiff is alleging in essence that the defendants proffered or failed to correct inaccurate or perjured testimony, plaintiff's causes of action are barred under the doctrine of issue preclusion or collateral estoppel.  Issue preclusion prevents relitigation by parties of issues that were actually litigated and necessarily decided in a prior action.  Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979).  The Ninth Circuit uses the following criteria to analyze issue preclusion in a case involving a criminal matter:

> (1) the prior conviction must have been for a serious offense so that the defendant was motivated to fully litigate the charges; (2) there must have been a full and fair trial to prevent convictions of doubtful validity from being used; (3) the issue on which the prior conviction is offered must of necessity have been decided at the criminal trial; and (4) the party against whom the collateral estoppel is asserted was a party or in privity with a party to the prior trial.

United States v. Real Property Located at Section 18, 976 F.2d 515, 518 (9th Cir. 1992).

---

[6]  Although the court in Morongo noted that a district court may grant leave to amend a complaint where the jurisdictional allegations are defective or inadequate, it may not do so where "the defect in the case is one of substance."  Id. at 1380 n.3.

1    These criteria are met in the instant case.

2            It is beyond dispute that the underlying criminal proceeding was sufficiently

3    severe so as to motivate plaintiff to fully litigate those charges.  Healthcare fraud is a

4    felony, and plaintiff faced 22 counts which carried significant incarceration and monetary

5    sanctions.  There was a full and fair trial, followed by numerous appeals and habeas

6    petitions.  The jury necessarily relied on the claims reviewed and processed by defendants,

7    on the testimony and evidence submitted by the United States, and the testimony of the trial

8    witnesses concerning plaintiff's conduct.  The jury evaluated potentially fraudulent

9    reimbursement requests in convicting plaintiff of medicare fraud.  Plaintiff herein

10   challenges this same evidence and testimony.  The district court's ruling in the underlying

11   habeas action by plaintiff, at that time a federal prisoner appearing pro se, speaks directly to

12   the gravamen of plaintiff's allegations in his current civil complaint.  See United States v.

13   Vogelsang, 2008 WL 1710103 (E.D. Cal., April 8, 2008).  It addresses plaintiff's motion to

14   correct or set aside a criminal judgment pursuant to 28 U.S.C. § 2255.  It further addresses

15   plaintiff's claim for dismissal and relief from the 23 counts with which he was charged.  Id.

16   at *5.  The district court addressed plaintiff's contentions that the government witnesses at

17   trial testified falsely, that the prosecution engaged in misconduct, and that numerous

18   persons engaged in negligent conduct before and during his criminal trial.  Finally, the

19   plaintiff here was the defendant in the prior action, and hence the application of issue

20   preclusion is appropriate and complete.

21           Moreover, the court recognizes that a petition for habeas corpus is a

22   prisoner's "sole judicial remedy when attacking 'the validity of the fact or length of . . .

23   confinement.'"  Preiser v. Rodriguez, 411 U.S. 475, 489-90 (1973); Young v. Kenny, 907

24   F.2d 874, 875 (9th Cir. 1990).  A civil rights complaint that appears to be seeking habeas

25   relief should be dismissed so that plaintiff may bring it as a petition for writ of habeas

26   corpus.  See Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir. 1995).  Plaintiff's

1    claim that he was wrongfully prosecuted and confined is barred by collateral estopped

2    because he has fully litigated this issue in the federal courts, both on direct appeal and on a

3    habeas petition, both of which were dismissed on the merits.  There is simply no remaining

4    provision for plaintiff to file or proceed with this civil action.

5                    ii.        Heck v. Humphrey Also Bars Plaintiff's Federal Civil Rights Claims

6                    To the extent that plaintiff seeks to assert federal civil rights claims seeking

7    damages for an allegedly unlawful conviction, because a judgment here in plaintiff's favor

8    would necessarily imply the invalidity of his conviction, and his conviction has not

9    otherwise been invalidated, his claims are not cognizable.  Under the Supreme Court's

10   reasoning in Heck v. Humprey, 512 U.S. 477 (1994), this action is properly subject to

11   dismissal.

12                   In Heck, the Supreme Court held that a claim to "recover damages for an

13   allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions

14   whose unlawfulness would render a conviction or sentence invalid" can only be brought

15   after a plaintiff proves his "conviction has been reversed on direct appeal, expunged by

16   executive order, declared invalid by a state tribunal authorized to make such

17   determinations, or called into question by a federal court's issuance of a writ of habeas

18   corpus."  Heck v. Humphrey, 512 U.S. at 486-87 (holding that a plaintiff challenging an

19   action whose alleged unlawfulness would implicate the validity of a conviction must prove

20   that the conviction has been invalidated).  The Heck bar applies to plaintiff's claims,

21   because he is ultimately challenging his conviction by alleging that the defendants provided

22   false or negligent testimony, or negligently reviewed the evidence on which his conviction

23   was based.  See also Erlin v. United States, 364 F.3d 1127, 1132-33 (9th Cir. 2004);

24   Hawkins v. Risley, 984 F.2d 321, 323-35 (9th Cir. 1993) (per curiam) (precluding a

25   plaintiff from relitigating claims in a civil rights action that were already litigated and

26   decided in his federal habeas case); see also Guerrero v. Gates, 357 F.3d 911, 917-18 (9th

1  Cir. 2004); <u>Martin v. Sias</u>, 88 F.3d 774, 775 (9th Cir. 1996) (holding that the <u>Heck</u> bar

2  applies to <u>Bivens</u> claims).

3      C.    <u>Plaintiff's Proposed Amendments Do Not Provide Federal Question Jurisdiction</u>

4

5        In opposition to the motions to dismiss, plaintiff for the first time contends

6  that his civil action is also premised on a federal question.  (Dkt. No. 32 at 12-14.)  Plaintiff

7  contends that the allegations of conspiracy, fraud, negligence and defamation against non-

8  diverse defendants are actually at least in part federal issues.  Plaintiff cites, for the first

9  time, to a host of federal statutes which he contends create a federal question.  Plaintiff

10  avers that defendants engaged in a fraud and conspiracy to violate his civil rights under 42

11  U.S.C. § 1985.  (Dkt. No. 32 at 16.)  Plaintiff also alleges general constitutional violations

12  relating to the underlying trial.  Plaintiff asks the court in a procedurally improper fashion[7]

13  for permission to amend his complaint, and then proceeds for 30 pages to proffer what

14  appears to be an amended complaint intertwined with a request for successive habeas relief.

15  Assuming, arguendo, that this action were not collaterally barred and that this court even

16  had the authority to grant leave to amend, plaintiff's proposed amendments do not create a

17  sufficient federal question.

18        A court lacks federal question jurisdiction where a complaint does not

19  present a substantial issue of federal law or where the resolution of a federal question does

20  not play a significant role in the proceedings.  <u>See</u> <u>Merrell Dow Pharmaceuticals, Inc. v.</u>

21  <u>Thompson</u>, 478 U.S. 804, 813 (1986) ("Franchise Tax Board, however, did not purport to

22  disturb the long-settled understanding that the mere presence of a federal issue in a state

23

24      [7] Plaintiff has failed to file moving papers seeking leave to amend his complaint or to attach the document he proposes to be filed as his amended complaint as required by Local Rule 137(c).  However, the court will overlook this noncompliance to ensure that the plaintiff, a pro se

25  litigant, does not lose the ability to have his contentions heard due to a lack of awareness of the court's technical procedural requirements.  <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699

26  (9th Cir. 1990).

14

cause of action does not automatically confer federal-question jurisdiction."); Lippitt v. Raymond James Fin. Servs., 340 F.3d 1033, 1040 (9th Cir. 2003) ("It is a long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."); Berg v. Leason, 32 F.3d 422, 423 (9th Cir. 1994) (holding that to present a federal question, the complaint must "present[] a substantial dispute over the effect of federal law, and the result [must] turn [] on the federal question.").  Merely alleging a constitutional violation is insufficient, the court's "limited jurisdiction cannot be invoked so simplistically."  Yokeno v. Mafnas, 973 F.2d 803, 807 (9th Cir. 1992).  In order to invoke federal subject matter jurisdiction, the federal question must be an essential element appearing on the face of the complaint, and even if there is a federal question presented, that federal question must be "substantial."  Hagans v. Lavine, 415 U.S. 528, 536 (1974).

Here, plaintiff alleges in his opposition that his conspiracy action includes two underlying causes of action, fraud and negligence.  (Dkt. No. 32 at 3.)  He contends that the conspiracy seeks to deprive him of his civil liberties and is a federal civil rights violation under a host of statutes, which therefore creates numerous federal issues.

First, plaintiff alleges in opposition that the defendants' conspiracy is a civil rights violation under 28 U.S.C. § 1343, and a conspiracy to interfere with civil rights under 28 U.S.C. § 1985.[8]  28 U.S.C. § 1343 provides a district court with "original jurisdiction of any civil action authorized by law to be commenced by any person" to recover damages because of the deprivation of any right or privilege of a citizen of the United states, by "any act done in furtherance of any conspiracy mentioned in section 1985 of title 42."  28 U.S.C. § 1343(a)(1).

---

[8]  Although plaintiff refers to 28 U.S.C. § 1985 regarding his conspiracy to interfere with civil rights claim, the court interprets this as a reference to 42 U.S.C. § 1985, which addresses those types of claims.

1    However, there "must be some racial, or perhaps otherwise class-based,

2 invidiously discriminatory animus behind the conspirators' actions."  Griffin v.

3 Breckenridge, 403 U.S. 88, 102 (1971).  The Supreme Court has made it clear that section

4 1985 is not to be construed as a general federal tort law.  Gerritsen v. de la Madrid Hurtado,

5 819 F.2d 1151, 1519 (9th Cir. 1987).  Plaintiff neither alleges nor hints in his request for

6 leave to amend at any such race-based or class-based conspiracy.

7    Second, plaintiff contends in his opposition that he is entitled to damages for

8 "injuries under federal law 28 U.S.C. § 1657 and to convict for federal health care fraud 18

9 U.S.C. § 1347, which is a federal question...."  (Dkt. no. 32 at 3.)  28 U.S.C. § 1657 is a

10 procedural provision which addresses the court's determination of the priority of civil

11 actions, and does not address a plaintiff's entitlement to damages.

12    Plaintiff also asserts that the federal officers' failure to perform their duties

13 presents a federal question under the Federal Tort Claims Act, in particular 28 U.S.C. §

14 1361 and 28 U.S.C. § 1346 "for negligence of federal officers."  (Dkt. No. 32 at 3.)  28

15 U.S.C. § 1361 is a statute that provides that district courts have original jurisdiction of any

16 action "in the nature of mandamus to compel an officer or employee of the United States or

17 any agency thereof to perform a duty owed to the plaintiff."  Mandamus is proper only to

18 command an official to perform an act which is an affirmative command and so plainly

19 prescribed as to be free from doubt.  Smith v. Grimm, 534 F.2d 1346, 1352 (9th Cir. 1976).

20 "This claim must be clear and certain and the duty of the officer ministerial."  Id.

21 Plaintiff's complaint or suggested amendment alleges no such ministerial duty.  Plaintiff's

22 request that the defendants, including the Federal defendants, "seal and destroy all arrest

23 and conviction records," is in no way a clear and certain ministerial duty of the sort

24 contemplated by section 1361.

25    Plaintiff's remaining referenced federal statutes or citations to constitutional

26 provisions or issues are insufficient to confer jurisdiction over this action.  The invocation

16

1   of section 1361 and the other federal statutes cited in brief reference by plaintiff do not

2   present a sufficient federal question for this court to consider.  As the court in Smith noted,

3   "[g]iven the predominate position of the federal government in our present society and the

4   burgeoning of federal regulation, we are not surprised when even the most 'local' lawsuit is

5   tangentially related to a federal law.  However, such a relation to a federal law is not

6   sufficient for section 1331(a) jurisdiction unless the lawsuit 'really and substantially

7   involves a dispute or controversy respecting the validity, construction, or effect . . .' of the

8   federal law."  Id. at 1350.  The contentions of the plaintiff's complaint, even as amended,

9   still sound in state tort law.

10                  D.      Plaintiff Has Not Exhausted Administrative Remedies

11                  Additionally, plaintiff's proposed alleged federal tort claims are insufficient

12   to confer jurisdiction over this action because plaintiff has not exhausted his administrative

13   remedies.  28 U.S.C. § 1346 is a portion of the Federal Tort Claims Act ("FTCA") which

14   provides a remedy, in limited circumstances, for negligence of federal officials.  However,

15   a federal court lacks jurisdiction over a FTCA claim where a plaintiff fails to exhaust

16   administrative remedies.  This requirement is an "unambiguous" jurisdictional prerequiste

17   to bringing suit under the FTCA.  McNeil v. United States, 508 U.S. 106 (1993); Vacek v.

18   U.S. Postal Serv., 447 F.3d 1248, 1250 (9th Cir. 2006); Johnson v. U.S., 704 F.2d 1431

19   (9th Cir. 1983) ("Exhaustion of the claims procedures established under the Act is a

20   prerequisite to district court jurisdiction.").  Plaintiff has not met the presentment

21   requirements that are a prerequiste to the filing of a civil suit.  Cadwalder v. United States,

22   45 F.3d 297, 300 (9th Cir. 1995) (citing 28 U.S.C. § 2675(a)).

23                  Plaintiff's opposition does not dispute the Federal defendants' contentions

24   that plaintiff has not presented an administrative tort claim to DHHS-OIG.  Hence,

25   plaintiff's claims against the United States are barred by the presentment requirement of the

26   FTCA.  See Warren v. United States Dept. of the Interior, 724 F.2d 776, 777-78 (9th Cir.

1  1984) (en banc); <u>Vacek</u>, 447 F.3d at 1250 ("We have repeatedly held that the exhaustion

2  requirement is jurisdictional in nature and must be interpreted strictly.")  Additionally, no

3  claim exists against DHHS-OIG because the United States is the only proper defendant in

4  an FTCA action – it is well-established that federal agencies cannot be sued in tort.  <u>Lance</u>

5  <u>v. United States</u>, 70 F.3d 1093, 1095 (9th Cir. 1995); <u>Pink v. Modoc Indian Health Project,</u>

6  <u>Inc.</u>, 157 F.3d 1185, 1188 (9th Cir. 1998).

7  The Federal Defendants presented evidence[9] that the plaintiff has failed to

8  administratively exhaust any tort claims against the United States that might otherwise be

9  cognizable under the Federal Tort Claims Act.  Plaintiff did not challenge or address the

10  legal authorities cited by the Federal defendants or object to the evidence regarding his

11  failure to exhaust administrative remedies.

12  E.     <u>The State Defendants' Claim Of Eleventh Amendment Immunity</u>

13  The State defendants have asserted Eleventh Amendment immunity in this

14  action.  Generally speaking, the Eleventh Amendment bars federal suits against a state by

15  one of its own citizens.  <u>Pennhurst v. Halderman</u>, 465 U.S. 89, 97-99 (1984).  This bar is

16  because state sovereignty requires that federal courts step aside in matters alleging a state's

17  violation of laws:  "[I]t is difficult to think of a greater intrusion on state sovereignty than

18  when a federal court instructs state officials on how to conform their conduct to state law.

19  Such a result conflicts directly with the principles of federalism that underlie the Eleventh

20  Amendment."  <u>Id</u>. at 117.  On this additional ground, plaintiff's complaint against the entity

21  State defendants, the State of California Department of Healthcare Services and the State of

22  California Department of Justice, should be dismissed.

23  ////

24

25  [9]  The Federal defendants submitted the declaration of Meredith Torres of DHHS-OIG
which stated that after reviewing the department's administrative tort claims database, it found

26  no administrative claim filed by plaintiff.  (Dkt. No. 23, Doc. No. 23-6.)

1        F.    <u>Statute of Limitations</u>

2        Although the court need not necessarily reach this issue in light of the

3    jurisdictional hurdles addressed above, plaintiff's claims also appear time-barred.

4    Defendant EDS contends that plaintiff's claim for negligence is barred by the statute of

5    limitations, which must be brought within two years.  Cal. Code Civ. Proc. § 335.1.

6    California law requires that any action based on fraud or mistake be brought within three

7    years.  Cal. Civ. Proc. Code § 338.  However, the allegedly fraudulent actions that gave rise

8    to his negligence claim took place between May 2000 and February 2001.  (Dkt. No. 1 at

9    5.)  Plaintiff's criminal trial took place in 2004, and plaintiff's sentencing occurred in 2005.

10   Plaintiff filed this complaint on October 16, 2009, over four years after the conclusion of

11   the underlying criminal trial.  In response, plaintiff has not asserted any basis, legal or

12   otherwise, for the tolling of the statute of limitations.

13       In opposition, plaintiff seeks, without citation to authority, a ruling that "this

14   court [] toll any statutes of limitations to the date of the original filing for good cause."

15   (Dkt. No. 32 at 2.)  Plaintiff also counters that the statute of limitations for conspiracy is

16   within the time period allowed by law because it is a continuing conspiracy.  (<u>Id</u>.)  Plaintiff

17   also alleges, without being more specific, that the "time period for negligence is also within

18   the two years discovery period," and that the plaintiff "continues to be injured by the

19   actions and inactions of the defendants who have caused the plaintiff to be bared (sic) from

20   participating in any health care program where federal funds are involved." (Dkt. No. 32 at

21   2.)  However, accrual of civil conspiracies for statute of limitations purposes is determined

22   in accordance with the last overt act doctrine, under which "injury and damage in a civil

23   conspiracy action flow from the overt acts, not from 'the mere continuance of a

24   conspiracy.'"  <u>Gibson v. United States</u>, 781 F.2d 1334, 1340 (9th Cir. 1986).  The

25   limitations period for a conspiracy accrues "when a party knows or has reason to know of

26   the injury which is the basis of the cause of action." <u>Kimes v. Stone</u>, 84 F.3d 1121, 1128

19

1   (9th Cir. 1996).  After reviewing the allegations of the complaint, they allege a conspiracy

2   which plaintiff knew of as early as 2000 and as late as 2005.  Lacking any arguments that

3   this action, filed in 2009, is timely, the court, as an alternative ground, finds plaintiff's

4   claims to be time-barred.

5        G.     <u>Privilege For Conduct Related To The Underlying Criminal Trial</u>

6        Defendant Bennett accurately contends that state claims, including those for

7   conspiracy, fraud and perjury, are barred by the litigation privilege.  Under California Civil

8   Code § 47(b), witnesses are provided a litigation privilege for "any publication required or

9   permitted by law in the course of a judicial proceeding to achieve the objects of litigation,"

10  whether or not the statements are made inside or outside the courtroom and even if no

11  function of the court or its officers are involved.  <u>Silberg v. Anderson</u>, 50 Cal. 3d 205

12  (1990).  This privilege, based on the importance of providing to citizens free and open

13  access to governmental agencies for the reporting of suspected illegal activity, is applied

14  liberally.  If there are any doubts about whether the privilege applies, those doubts are

15  resolved in favor of application of the privilege.  <u>Kashian v. Harriman</u>, 98 Cal. App. 4th

16  892 (Cal. Ct. App. 2002).

17       This court is satisfied that the allegations of the complaint bring forth claims

18  that are prohibited because of California's litigation privilege.  The complained of conduct

19  had a logical relation to plaintiff's underlying criminal trial.  Plaintiff's damages sought are

20  a result of his arrest and conviction related to that alleged wrongdoing.  Following a lengthy

21  jury trial, the credibility determinations apparently ran in the prosecution's favor.  Further,

22  the litigation privilege involving judicial proceedings is very broad and "is not limited to

23  statements made during a trial or other proceeding, but may extend to steps taken prior

24  thereto, or afterwards."  <u>People ex rel. Gallegos v. Pacific Lumber Co.</u>, 158 Cal. App. 4th

25  950 (2008).  On this alternative ground, plaintiff's allegations are likewise barred.

26  ////

20

1        H.      Leave to Amend Would Be Futile

2               Assuming that this court has the authority to grant plaintiff leave to amend

3   his complaint, despite the lack of a jurisdictional predicate for such a ruling, in light of the

4   futility of any such amendment, it will be recommended that this action be dismissed.

5   Plaintiff, in his opposition briefing, requested leave to file an amended complaint rather

6   than have his complaint dismissed.  In assessing the propriety of a motion for leave to

7   amend, the court is aware that requests for leave to amend, particularly those from a pro se

8   litigant, should be allowed with extreme liberality.  However, here, the court places heavy

9   weight on the futility of amendment.  See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339

10  (9th Cir. 1996).  Plaintiff's opposition briefing contains what appears to be a proposed

11  amended complaint.  (See Dkt. No. 32 at 3-34).  Plaintiff proffered his proposed

12  amendments, factual allegations and requests for damages.  The court reviewed those

13  allegations carefully and recommends denial of leave to amend only after the exercise of

14  due caution.

15              The plaintiff's proposed amendments do not avoid the fact that the court

16  lacks jurisdiction over plaintiff's claims because they suffer from a variety of jurisdictional

17  issues, particularly that plaintiff's claims are collaterally estopped.  These fundamental

18  defects cannot be cured via amendment.  Flowers v. First Hawaiian Bank, 295 F.3d 966,

19  976 (9th Cir. 2002) ("A district court, however, does not abuse its discretion in denying

20  leave to amend where amendment would be futile.")  Because plaintiff's action

21  insubstantially invokes federal subject matter jurisdiction and remains an impermissible

22  collateral attack against his prior conviction, it is clear that the deficiencies of the complaint

23  cannot be cured by amendment.  Therefore, this action is the rare case that should be

24  dismissed without leave to amend.

25       I.      Plaintiff's Claim of Innocence and Request for Successive Habeas Relief

26              In his opposition briefing, plaintiff requests leave to file a second successive

21

28 U.S.C. § 2255 petition challenging his conviction "based on new discovery." (Dkt. No.

32.)  Preliminarily, the court notes that plaintiff's prior request for relief under section 2255

was rejected by this court.  In reaching this result, the court found that plaintiff did not

"present anything to the court beyond conclusory and unsubstantiated arguments that the

government's evidence was false and that he is not guilty of the crimes."  United States v.

Vogelsang, 2008 Wl 1710103, at *10 (E.D. Cal., April 8, 2008).

        More importantly, plaintiff's opposition briefing in this civil action, or even

in his complaint for that matter, is not the proper method by which to seek relief to bring a

second or successive § 2255 petition.  That relief must be sought via a separate petition or

motion and must be sought in the case in which the underlying sentencing occurred, before

the judge who considered the prior petition.  See Local Rule 190.  Further, pursuant to 28

U.S.C. § 2255(h), a second or successive section 2255 motion must be certified as provided

in section 2244 by a panel of the appropriate court of appeals "to contain - (1) newly

discovered evidence that, if proven and viewed in light of the evidence as a whole, would

be sufficient to establish by clear and convincing evidence that no reasonable factfinder

would have found the movant guilty of the offense."  The rules limiting successive

challenges to criminal convictions impose significant limitations on the power of federal

courts to award relief to prisoners who file "second or successive" habeas petitions.  See

Cooper v. Calderon, 274 F.3d 1270, 1272-73 (9th Cir. 2001).  Lacking authorization from

the court of appeals to file a second or successive section 2255 motion, this district court

has no jurisdiction to consider the second or successive application.  U.S. v. Lopez, 577

F.3d 1052, 1061 (9th Cir. 2009).

        Here, plaintiff has not complied with the procedural prerequisites for

seeking successive section 2255 relief.  Plaintiff's request for successive § 2255 relief here

only serves to buffer the argument that plaintiff is improperly seeking to relitigate his

criminal conviction via this civil case and thus that this action is precluded under the

1  doctrine of collateral estoppel.

2        J.      <u>Stipulated Dismissal of CIGNA</u>

3        Defendant CIGNA filed a motion to dismiss.  In response to this particular

4  motion, plaintiff stated that "based on the discovery of documents from CIGNA-Medicare

5  . . . [he] moves to remove CIGNA Medicare as a defendant in the immediate action." (Dkt.

6  No. 32 at 2.)  In reply, defendant Cigna-Medicare stated that although it was unclear what

7  discovery plaintiff was referring to, it requested dismissal based on plaintiff's statement of

8  intention to dismiss.  (Dkt. No. 34 at 2.)  Based on this agreement of the parties, it is

9  recommended that defendant CIGNA be dismissed from this action.

10        K.      <u>Supplemental State Law Claims</u>

11        Finally, to the extent that plaintiff has any remaining state law claims, this

12  court declines to exercise supplemental jurisdiction over those claims.

13  IV.     <u>CONCLUSION</u>

14        For the foregoing reasons, it is hereby recommended that:

15        1.      This action be dismissed; and

16        2.      The Clerk of Court is directed to close this case.

17        These findings and recommendations are submitted to the United States

18  District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).

19  Within fourteen days after being served with these findings and recommendations, any

20  party may file written objections with the court and serve a copy on all parties.  <u>Id</u>.; <u>see also</u>

21  Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate

22  Judge's Findings and Recommendations."  Any response to the objections shall be filed

23  with the court and served on all parties within fourteen days after service of the objections.

24  Local Rule 304(d).  Failure to file objections within the specified time may waive the right

25  ////

26  ////

23

to appeal the District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998);

<u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED:  July 9, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

24